| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:20-CR-00405-UNA |
| v. | ) | |
| | ) | |
| MICHAEL FEIN, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FEIN'S OPPOSITION TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION AND MOTION FOR RELEASE ON BAIL

Defendant Michael Fein, by and through his undersigned counsel, Justin K. Gelfand, Dustin Goldberger and the law firm Margulis, Gelfand, DiRuzzo & Lambson, respectfully opposes the Government's motion for detention and respectfully requests that this Court release him on bail subject to a combination of conditions of release that will reasonably assure his appearance at trial.

As a matter of law, the Bail Reform Act preserves the preference of release of the accused pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Liberty is the norm, and detention prior to trial is "the carefully limited exception." *Id*. The Government's motion for detention is predicated solely on the misguided premise that Fein is a risk of flight. (*See* Doc. 7). Thus, the Government bears the burden of proving by a preponderance of the evidence that no combination of conditions of release will reasonably assure Fein's appearance in this case.

### *Introduction*

The Government's position is a moving target. Initially, the Government argued Fein is a risk of flight because he "possesses an Israeli passport." (Doc. 7 at ¶ 3). But that is plainly untrue, as the Government has now only acknowledged 5 days *after* Fein initially appeared in court on this case. (*See*

Doc. 19 at ¶ 1). Fein has ***never*** possessed any passport other than a United States Passport—and that passport remains in the custody of the Israeli courts pursuant to an Israeli court order, a fact curiously missing from the Government's initial detention motion and "supplemental" motion in which the Government corrects some of its previous incorrect representations. Furthermore, the Government also initially argued, this time based on information and belief, that Fein "is a dual citizen of Israel." (Doc. 7 at ¶ 3). But that too is plainly untrue, as the Government now also acknowledges. (*See* Doc. 19 at 1). Fein is, and has always been, a United States citizen who has strong roots in both the United States and Israel and who has lived in Israel since well before the indictment in this case was returned in August 2020. Now that the Government cannot credibly base its request for pretrial detention on the incorrect premises that Fein is a dual citizen (he is not) and possesses a foreign passport (he does not), the Government's position rests on three similarly incorrect premises: (1) that Fein learned about this investigation "at least as early as January 14, 2020, if not earlier" and, based on a reported statement in a news article the prosecution Googled (as opposed to actual records reflecting Fein's dates of travel and border crossings), the Government contends Fein soon fled to Israel, never to return to the United States (Doc. 7 at ¶ 5); (2) that Fein reported his United States Passport as lost or stolen in November 2022 and on June 16, 2026 (Doc. 19 at 2); and (3) that Fein exercised his rights under United States and Israeli law to extradition.

In fact, Fein did not flee the jurisdiction. In stark contrast, he has lived in Israel with his wife and six children since well before the indictment in this case was returned in August 2020. In February 2020—***after*** the Government's key date of January 14, 2020 when the Government contends Fein learned about the investigation and fled the United States to Israel—Fein flew from New York to Tel Aviv on February 6, 2020 ***and returned to New York on February 10, 2020***. He then returned to Israel on February 26, 2020—the week before the COVID-19 pandemic first struck New York

City and the month before COVID shut down the world. A rental car reservation receipt even reflects that Fein rented a car in Kansas City, Missouri, on February 24, 2020 and returned it on February 26, 2020, clearly demonstrating he did not learn about the investigation and flee the United States, never to return voluntarily. Even taking the Government's unsubstantiated timeline at face value, Fein voluntarily returned to the United States and even to the State of Missouri weeks after January 14, 2020.

Indeed, Fein is not the caricature of an international fugitive the prosecution has painted him out to be—both in its pleadings before this Court and in the U.S. Attorney's Office's press release issued June 25, 2026 (quoting the FBI Special Agent in Charge: "no matter where a fugitive runs, the FBI and its partners will relentlessly pursue those who commit serious crimes and attempt to evade accountability"). That is not the person who appears before this Court seeking release on bail. Fein was not "a fugitive" who ran. This man with no prior criminal history was not even indicted until August 2020. And, as the Government is well aware, for the last several years he has been on house arrest in Israel while participating fully in the extradition process (as is his right) and he has fully complied with all requirements imposed by the relevant authorities. Consistent with both United States and Israeli law, Fein retained reputable counsel in Israel to represent him in extradition proceedings and simultaneously retained counsel in the United States. This reflects Fein's willingness to abide by court orders, to appear as required, and to remain fully engaged with the judicial process as this case progresses. The FBI did not "catch" him. Rather, the United States indicted a man legally residing in Israel—his home for decades prior to the indictment—and Fein exercised his rights with respect to extradition.

Indeed, in a pleading filed with the court in Israel that we intend to provide to this Court both in Hebrew and in translated English, the parties including the Israeli government agreed "that throughout the entire period of [Fein's] detention under electronic monitoring, [Fein] did not

3

violate any of the conditions of his release." If prior performance is the best indication of what will transpire in the future, Fein's track record of complying with court orders in this case is exemplary and clearly reflects he will abide by any conditions of release set by this Court.

To that end, Fein deposited his only U.S. Passport with the Israeli court system. If his goal was to avoid extradition, there were approximately 3 years during which he could travel freely including to a country without an extradition treaty with the United States—but it is no surprise he did not do that because that was never his goal. And despite the Government's latest contention in its supplemental motion, Fein did not independently "apply" for a United States Passport on June 16, 2026. The United States Marshal's Service obtained a travel document for him and accompanied him to the United States pursuant to his extradition.

Furthermore, this is a non-violent economic offense case in which the Bail Reform Act's individualized assessment strongly favors release. Fein presents no danger to the community, poses no serious risk of flight, and suffers from a serious medical condition requiring treatment that cannot be adequately managed in custody.

As such, the law mandates pretrial release pending trial—and the practicalities further warrant it.

## I.      Procedural Background

Fein is charged in a two-count indictment alleging one count of wire fraud and one count of bank fraud.

## II.     Applicable Law

Under the Bail Reform Act (hereinafter, the "Act"), "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. As the United States Court of Appeals for the Eighth Circuit has held,

> The passage of the pretrial detention provision of the 1984 Act did not…signal a congressional intent to incarcerate wholesale the category of accused persons

4

awaiting trial. Rather, Congress was demonstrating its concern about "a small but identifiable group of particularly dangerous defendants as to whom neither the imposton [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons."

*United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* 1984 Code Cong. & Ad. News at 3189).

Consistent with the plain language of the statute and with the intent of Congress, the Act encourages release of the accused pending trial so long as some condition or combination of conditions can reasonably assure the appearance of the accused at trial (and the safety of the community or any other person). *Id.* at 890-91. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891. Moreover, "[d]oubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). These protections reflect the broader constitutional presumption of innocence, under which "[o]ne charged with a crime is, after all, presumed innocent." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Because pretrial detention implicates fundamental liberty interests, "a single individual unnecessarily detained before trial is one individual too many," and the increasing use of pretrial detention places "tremendous wear on our constitutional system." *See United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan, J. and Marshall, J). Accordingly, courts must apply a "case-by-case" approach in assessing the propriety of detention at any stage of the proceedings. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted).

Because this case does not fall within the statutory presumption of detention under 18 U.S.C. § 3142(e)(3), the Government bears the burden of establishing that no condition or combination of conditions will reasonably assure Fein's appearance (and, if it proceeded under

this prong, the safety of the community). *United States v. Kisling,* 334 F.3d 734, 735 (8th Cir.2003); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). In making this determination, courts consider the factors set forth in 18 U.S.C. § 3142(g): "(1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger to the community." *United States v. Vang*, 779 F. App'x 426, 427 (8th Cir. 2019); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). These factors are not applied mechanically or in isolation, but instead are assessed collectively to determine whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. Accordingly, Fein addresses each factor in turn.

## III.    Analysis Under 18 U.S.C. § 3142(g)

### a.  Nature and Circumstances of Offense

Section 3142(g)(1) directs this Court to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence … or involves … a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(g)(1). The charges in this case arise from alleged bank fraud and wire fraud offenses. While the Government's allegations involve financial conduct, there are no allegations that Fein used violence, threats of violence, weapons, or physical force in connection with the charged offenses. Accordingly, the nature and circumstances of the offense weigh heavily against pretrial detention and in favor of release subject to conditions set by this Court.

### b.  Weight of the Evidence

This factor does not require a pretrial determination of guilt or innocence of the charged crimes but instead considers the weight of the evidence as it bears on whether conditions of release will reasonably assure the defendant's appearance (and the safety of the community). *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.

1991) (noting that factor relates to the weight of evidence of dangerousness and incentive to flee); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

In this case, the weight of the evidence should not factor into the calculus. To date, the Government has not disclosed a single page of discovery and the Government's assertions about its multi-year investigation have already proven unreliable. For example, it is not particularly hard for the Government to determine a defendant's citizenship and what passports they hold—but the Government had no idea about either of those facts until approximately 6 years after the indictment. And it appears the Government did not actually investigate when Fein came to the United States and left the United States based on evidence easily in the Government's possession, custody, and control; instead, the Government appears to have googled a newspaper article and made the totally incorrect assumption that Fein learned about the investigation in January 2020, fled the United States for Israel, and never intended to return. The simplest investigation would have revealed travel records, border crossings, airline tickets, a boarding pass, financial receipts related to travel, and even a rental car reservation in the state in which this case is pending *after* Fein purportedly fled to Israel never to return to the United States voluntarily.

Based on its pleadings, the Government appears to base the entirety of its argument for detention on the fact that Fein was extradited. But that does not constitute evidence of a risk of nonappearance. The Bail Reform Act requires an individualized assessment of whether any condition or combination of conditions will reasonably assure Fein's appearance. The mere fact that Fein was residing in Israel—his home for decades—when the charges were brought and exercised his right to proceed with the extradition process—all while represented by legal counsel in Israel—does not establish that detention is necessary, let alone warranted. *United States v.*

7

*Boustani*, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), aff'd, 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019) (emphasizing that courts must assess flight risk under the totality of the circumstances and that it is not "just that the person is a foreigner" or "just that the person has means"); *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention.").

Critically, Fein did not flee. He returned home to Israel and resided there as the law allows. COVID then struck the world. The Government here then indicted him. Throughout that entire time frame, he fully participated in judicial processes—and he should not be penalized for doing so. Fein is now before this Court and subject to its jurisdiction, and a wide range of release conditions are available to reasonably assure his future appearance including, but not limited to, home detention with electronic monitoring at an approved home plan location in the United States.

Fein's medical condition further reduces any risk of flight. Fein suffers from Relapsing-Remitting Multiple Sclerosis, where the immune system attacks the central nervous system, which interrupts communication between the brain and the rest of the body. This nerve damage leads to common mobility challenges and is a condition that results in limited mobility and requires ongoing medical treatment and monitoring. As a practical matter, these physical limitations significantly restrict Fein's ability to travel, particularly over long distances or without medical support. And Fein's need for consistent, reliable medical care from a neurologist who specializes in treating MS is vital to his wellbeing. That can happen while on pretrial release where he can be treated and monitored as necessary in the community—without posing the profound burden of meeting this requirement while in the custody of the U.S. Marshals Service.

### c. History and Characteristics

Fein has no prior criminal history and no pattern of criminal conduct. This is Fein's first encounter with the criminal justice system, which weighs strongly in favor of pretrial release under

Section 3142(g)(3)(A), directing this Court to consider the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, [and] community ties." 18 U.S.C. § 3142(g)(3)(A).

Contrary to the Government's contentions and while there is no denying Fein has strong ties to Israel, his home for several decades, Fein also has strong ties to the United States. He is a United States citizen first and foremost and has never held citizenship in any other country. He has very close family and friends in the United States (especially in greater New York) and those ties are so close that those people are willing to pledge as sureties (some secured, some unsecured) an amount totaling millions of dollars to ensure Fein's appearance in these court proceedings and compliance with his conditions of release. Fein will provide the names of those individuals and amounts they are willing to bear responsibility for to this Court at the detention hearing on July 6, 2026.

Fein has also demonstrated sustained compliance with restrictive supervision abroad. For several years, Fein has been subject to strict house arrest conditions in Israel and has complied fully without incident—a fact frustratingly missing from the Government's two motions for detention. This extended history of adherence to court-imposed restrictions is strong evidence that Fein can and will comply with conditions of release imposed by this Court. Although Fein resided abroad and was subject to extradition proceedings, his conduct during that process does not support a finding that he is a risk of flight. Fein did not evade authorities, obstruct proceedings, or attempt to avoid apprehension. Instead, he complied with the extradition process and proceeded through lawful channels. This is reflective of a defendant who is a perfect candidate for pretrial release. A defendant's exercise of his constitutional and statutory rights through proper channels and in proper ways should not be held against that defendant; rather, in stark contrast, it reflects that he is a perfect candidate for release on conditions.

As detailed above, Fein suffers from Relapsing-Remitting Multiple Sclerosis, a serious medical condition that requires medication administered with fatty foods and ongoing specialized medical monitoring. These treatment requirements are medically necessary and continuous. Pretrial detention would significantly disrupt Fein's treatment regimen—jeopardizing his health in very serious ways for no good reason.

Fein's physical condition therefore weighs strongly in favor of release under 18 U.S.C. § 3142(g)(3)(A). *United States v. Scarpa*, 815 F. Supp. 88, 92 (E.D.N.Y. 1993) (recognizing that a defendant's medical condition is a relevant factor in determining whether continued pretrial detention is appropriate); *United States v. Stephens*, 447 F. Supp. 3d 63, 66 (S.D.N.Y. 2020) ("Compelling reasons may exist where release is necessary for the preparation of the defendant's defense, *see* 18 U.S.C. § 3142(i), or where the defendant's serious medical conditions warrant release"); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (releasing a defendant who otherwise would have been detained on dangerousness grounds because his severe medical condition could not be adequately addressed in custody and strict release conditions mitigated any threat to the community).

### d. Fein Does Not Pose a danger to Any Other Person or the Community

The Government understandably does not appear to be seeking pretrial detention under this prong of the Bail Reform Act. However, in any event, it clearly does not apply.

Fein does not pose a danger to any person or the community. The charged offenses involve allegations of bank fraud and wire fraud which do not involve violence, threats of violence, weapons, or physical force. Nor is there any allegation that he has engaged in conduct posing a risk of physical harm to others. Accordingly, the nature of the charged offenses does not support a finding that Fein presents a danger to the community warranting pretrial detention. And to the extent this Court is concerned about a financial danger to the community, the conditions of release

this Court regularly imposes in cases involving allegations of financial fraud are more than sufficient to protect the community.

While the defense submits that no additional conditions of release beyond those standard conditions applicable to virtually every defendant in this district are warranted, Fein would willingly submit to any conditions of release that this Court sees fit—underscoring that detention should remain the "carefully limited exception" that has no place in this case. *See Salerno*, 481 U.S. at 755.

## IV. Conditions of Release

Even where a court identifies concerns regarding risk of nonappearance, pretrial detention is not warranted unless the Court determines that no condition or combination of conditions will reasonably assure the defendant's appearance. *See* 18 U.S.C. § 3142(e). Courts therefore must consider whether proposed conditions, including financial, supervisory, and restrictive conditions, can reasonably mitigate any perceived risk of flight. *See United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985), aff'd, 853 F.2d 928 (11th Cir. 1988) (considering extensive proposed conditions of release, including bond, home detention, electronic monitoring, and waiver of extradition).

In this case, we are proposing a comprehensive bail package that will undisputedly assure Fein's appearance at court proceedings and that he is not a danger to the community.

We are proposing a home plan, subject to approval by this Court and Pretrial Services, at 1324 49th Street, Brooklyn, NY 11219. We understand this would require courtesy supervision in New York, which is a regular practice of this Court especially in judicial districts such as the Eastern District of New York. The house does not contain any firearms or dogs. In the alternative, if this Court would be more comfortable with Fein residing in this judicial district during the pendency of this case, Fein's family is prepared to lease an apartment for him at a location approved by Pretrial

Services consistent with precedent in other cases in this district. We have no objection to electronic monitoring and Fein demonstrated perfect compliance with electronic monitoring for several years in Israel while the extradition process was pending.

As set out above, to the extent necessary and while not as common in this judicial district, we are also prepared to further guarantee Fein's appearance and compliance with his conditions of release through up to a total of millions of dollars by friends and family members (some secured and some unsecured). This should give this Court the added comfort that Fein will not flee as doing so would cause serious harm to people close enough to him to make such financial commitments.

## V.     Conclusion

As this Court is aware, this detention hearing is neither the time nor the place to litigate the underlying merits of the case. The law presumes Fein innocent.

Under these circumstances, and as will be further established at the hearing before this Court, Fein should be released on bail with a combination of conditions that will reasonably assure his appearance at trial and the safety of the community or any other person. This case falls squarely within "the norm," where "liberty" pending trial is appropriate. *Salerno*, 481 U.S. at 755.

Respectfully submitted,

**Margulis Gelfand, LLC**


 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
138 N. Meramec Avenue
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*

**<u>Certificate of Service</u>**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

/s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
138 N. Meramec Avenue
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*