IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:20 CR 405 AGF-SPM |
| | ) | |
| MICHAEL FEIN, | ) | |
| | ) | |
| Defendant. | ) | |

**UNTED STATES' RESPONSE TO DEFENDANT'S**
**MOTION TO REVOKE THE MAGISTRATE'S DETENTION ORDER**

Comes now the United States of America, by and through its attorneys, Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District, and for its Response to Defendant's Motion to Revoke the Magistrate's Detention Order, states to this Honorable Court as follows:

This Court reviews the Order of the Magistrate Judge *de novo*, reviewing the record below and making its own determination as to whether pretrial detention is proper under the facts and circumstances presented. *United States v. Sazenski*, 806 F.2d 846, 847 (8th Cir. 1986). It is the position of the United States that the record established below is sufficient for this Court to make its *de novo* determination that the Magistrate Judge's Order is appropriate, and that no further evidentiary hearing on the matter is required, such that this Court may adopt the Magistrate Judge's Order. *United States v. Cook*, 87 F.4th 920, 924-25 (8th Cir. 2023).

In this case, the United States undertook a five and one-half years effort to formally extradite Defendant from the State of Israel, where he had fled upon learning that his numerous companies operating in St. Louis and other locales within the United States were under federal criminal investigation. Upon Defendant's ultimate return to the Eastern District of Missouri

following Israel's Order granting the extradition request, the United States sought his pretrial detention based upon a serious risk of further flight. United States Pretrial Service has recommended pretrial detention in this case. The Magistrate Judge held a thorough Hearing on the government's request for detention, during which both the United States and the Defendant were permitted to submit any and all information deemed appropriate in support of their positions.

Defendant raised no objection to the Pretrial Services Report. Notably, much of the information provided by Defendant to Pretrial Services was unconfirmed, including that Defendant's own wife could not confirm when he was last employed, or confirm Defendant's claimed educational background. Further, Defendant identified assets less than $5,000, and had no local residence, nor any residence within the United States. Following that Hearing, and upon reviewing all of the evidence and information submitted, the Magistrate Judge issued her Order of Detention, finding by a preponderance that Defendant presented a substantial and actual risk of further flight.

Significantly, in arguing in support of a bond, Defendant offered to post three residential properties as surety, which properties are owned by various family members located in Brooklyn, New York and Toms River, New Jersey. However, during the Magistrate Court Hearing the United States submitted information which reflected that each of those three properties are currently encumbered by two or three substantial outstanding mortgages, which would leave the Court with a third or fourth subordinate position on each of those properties should Defendant fail to meet the conditions of any bond.

Defendant is charged with Wire Fraud, 18 U.S.C. § 1343, and Bank Fraud, 18 U.S.C. § 1344. Both charges carry a statutory maximum punishment of 30 years imprisonment if convicted. Defendant, acting through his various companies, is alleged to have personally made

materially false statements and representations to multiple national financial institutions, as well as government sponsored enterprises The Federal Home Loan Mortgage Corporation ("Freddie Mac") and The Federal National Mortgage Association ("Fannie Mae"), relative to loans, financing, and refinancing for multiple-family apartment complexes located in various cities, including St. Louis, Missouri, Kansas City, Missouri, and Tulsa, Oklahoma. Defendant's companies are alleged to have obtained approximately $28,225,000.00 through his fraudulent scheme.

A federal grand jury subpoena was served upon Defendant's company on January 13, 2020, and Defendant was clearly aware of the subpoena and the federal criminal investigation as early as January 14, 2020 (see Government Exhibits 1 and 2). At that time, Defendant advised the company's Chief Financial Officer "to slow it down and delay" production of responsive records, as some of the target properties "had problems." (see Government Exhibit 2). As recounted by the company's Chief Financial Officer, relative to the federal criminal investigation and the grand jury's subpoena, Defendant directed him not to produce responsive records on a number of the target properties, because "we have problems with" those. Defendant also advised the Chief Financial Officer that he was going to travel back to Israel, that once the properties are sold all issues would be dropped. Perhaps most telling, Defendant advised the Chief Financial Officer, "What are they going to do, come to Israel and get me?" (see Government Exhibit 3). Shortly thereafter, Defendant did just that, he fled to Israel.

A federal grand jury in the Eastern District of Missouri indicted Defendant on the instant charges on August 20, 2020. An arrest warrant was issued by this Court at that time for Defendant's arrest. As the Magistrate Judge found, "the nature and circumstances of the alleged crimes are serious and sophisticated. The weight of the evidence against Fein is strong." The

evidence against Defendant is substantial, and consists primarily of numerous first-hand witness accounts, voluminous financial records prepared and/or signed by Defendant, and email communications involving Defendant. If convicted of one or both charges, Defendant faces a potentially significant prison sentence, both under the governing statutes (maximum sentence of 30 years) and under the pertinent sentencing guidelines. As recounted in an August 21, 2020 St. Louis Post Dispatch article, when a reporter contacted Defendant in Israel and read him parts of the government's press release announcing the charges, Defendant feigned ignorance, advising the reporter that "I have no idea what they are talking about…." (see Government Exhibit 4).

While Defendant suggests now that his failure to return to the United States to face the serious charges contained within the Indictment was simply an assertion of his legal rights to challenge the extradition request, the Jerusalem Post reported on June 29, 2026 that, "Jerusalem District Court, Judge Ohad Gordon declared Michael Fein 'extraditable' as early as April 2024, while sparing no criticism of his conduct during the proceeding." "Gordon ruled that the repeated postponement requests, the exchange of arguments regarding representation, and the failure to present documents he promised to bring from abroad left 'a sharp impression of someone seeking to prevent the hearing on the extradition petition." (see Government Exhibit 7). The article also noted that during the Israeli court hearings it came out that during the period of the scheme charged in the Indictment, 2016-2019, Defendant had "entered and exited Israel 117 times." (see Government Exhibit 7).

During the lengthy extradition process Defendant resided in an apartment owned by his wife in Jerusalem, Israel where Defendant has resided since 1993. Defendant travelled frequently to the United States for business purposes during the period charged in the Indictment, as he

managed numerous multifamily apartment complexes located in the St. Louis, Kansas City, and Tulsa areas, along with his companies' main office in Reading, Pennsylvania.

Upon confirmation that Defendant was in fact living in Israel, on June 25, 2021 the United States formally sought extradition of Defendant from Israel pursuant to the Wire Fraud and Bank Fraud charges contained within the Indictment. On or about July 12, 2023, Defendant was arrested by Israeli authorities on the extradition petition, and the hearings and appeals began as Defendant declined to waive formal extradition and return voluntarily to the United States. Defendant was released in Israel pending the outcome of those hearings and appeals under strict conditions and electronic monitoring. Defendant now argues that because he met all of his conditions of release while in Israel, and did not attempt to flee to another country, he should be released on similar conditions here. However, as is clear from the record before this Court, Israel was and remains Defendant's choice of country; his wife, children, mother and other family members reside there. As the Magistrate Court found, "His conduct signifies that he would rather be in Israel where his wife and children reside. This all suggests Defendant presents a serious risk of flight." While successfully avoiding extradition for all those many years there was no motivation for Defendant to flee Israel; now finally under arrest in the Eastern District of Missouri there is strong motivation for Defendant to flee again from the United States to avoid the charges and to return to his family. As the Magistrate Judge found, "The United States argues persuasively that Defendant's lack of community ties here, ongoing significant foreign ties, and financial support from overseas given his lack of employment, increases his serious risk of flight."

There is nothing in the record to suggest that Defendant's medical needs are not being properly met while in United States Marshal custody, as the Magistrate Judge found. The Marshal Service has gone above and beyond, both in transporting Defendant back to the Eastern District of

Missouri and in ensuring that his medical needs are met while in pretrial confinement. Since the Hearing, Defendant has not raised any issue whatsoever regarding his medical treatment with the Marshal Service. Similarly, Defendant's religious beliefs, including the need for prayer and the need for Glatt Kosher meals, are being met, again through the efforts of the Marshal Service and the Pulaski County Jail. While reasonable accommodation is the standard, the United States has gone much further here to make sure Defendant's various needs are met while in pretrial custody.

In determining that pretrial detention is appropriate here, the Magistrate Judge fully considered the serious nature and circumstances of the offenses charged, the weight of the evidence against the Defendant, and the history and characteristics of the Defendant. 18 U.S.C. § 3142(g). As to the second factor, weight of the evidence against the defendant, it is unclear what Defendant is now attempting to argue. Of course, weight of the evidence against the defendant, as with the other factors, is considered here in analyzing the risk of Defendant's further flight, as the Magistrate Judge did here. A strong case with substantial evidence, such as the one charged in the Indictment here, suggests that Defendant has a greater motive to flee. The analysis of this factor focuses on the weight of the evidence against the Defendant relative to the pending charges, not, as Defendant now seems to suggest, as to Defendant's actual risk of flight. See, for example, *United States v. Ochoa*, 2024 WL 5088835 (EDMO, 2024); *United States v. Morales-Diaz*, 2025 WL 2050291 (EDMO 2025), where the District Court considered the weight of the evidence against the defendants as to the underlying charges against them in determining whether to detain the defendants. In the instant case, the United States proffered and submitted in its Motion that the weight of the evidence against the Defendant is substantial, and as stated above, consists primarily of numerous first-hand witness accounts, voluminous financial records prepared and/or signed by Defendant, and email communications involving Defendant.

As determined by the Magistrate Judge, the United States has met its burden by a preponderance of the evidence that Defendant presents a serious and actual risk of flight, and that there is no condition or set of conditions which will reasonably assure that he appears as directed and does not flee the United States again. *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985). It is the position of the United States that, upon a *de novo* review of the facts and evidence contained within the record, this Court will determine that pretrial detention is proper and will affirm the Order of the Magistrate Judge. *United States v. Maull*, 773 F.2d 1190 (8th Cir. 1985).

WHEREFORE, the United States of America requests this Court issue its Order overruling and denying Defendant's instant Motion, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

THOMAS C. ALBUS
UNITED STATES ATTORNEY

*/s/ Hal Goldsmith*
HAL GOLDSMITH (#32984 MO)
ASSISTANT UNITED STATES ATTORNEY
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Hal Goldsmith*
HAL GOLDSMITH
Assistant United States Attorney